The People of the State of Illinois ex rel. Aime Paul Heineck, Appellee, v. Melville G. Holding et al., Appellants.

## Gen. No. 22,021.

1. CIVIL SERVICE, § 5*—*when commission may set aside examination.* Under Hurd's Rev: St. ch. 34, sec. 61, subdiv. 23 (J. & A. ¶ 2815), the Cook County Civil Service Commission has power to set aside an examination which in its opinion had been irregularly, unfairly or improperly conducted.

2. CIVIL SERVICE, § 5*—*when fraud by commission in setting aside examination not shown.* Evidence *held* not to support a contention that the Cook County Civil Service Commission was improperly influenced or acted fraudulently or dishonestly in setting aside an examination on the ground that it had been improperly and unfairly conducted.

Appeal from the Circuit Court of Cook county; the Hon. J. H. FORNOFF, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed. Opinion filed June 27, 1917.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MACLAY HOYNE, for appellants; ERNST BUEHLER, WILLIAM E. CHURCH, ROBERT McMURDY and CARL H. ZEISS, of counsel.

FRANCIS X. BUSCH, for appellee.

MR. PRESIDING JUSTICE GOODWIN delivered the opinion of the court.

The appellants seek the reversal of a judgment entered in the Circuit Court, awarding a writ of mandamus commanding appellants, as Cook County Civil Service Commissioners, to set aside an order entered by them September 3, 1912, canceling an examination, held December 7, 1911, of applicants for registration on a list of eligibles for appointment as attending physicians at the Cook County Hospital, and directing them to certify to the president of the county board a list of names created as a result of that examination. The parties will hereafter be known as relator and respondents.

It appears that by order of the county board the medical staff of the County Hospital comprises twelve departments including sixty-seven physicians, all appointed by the president of the board for periods of six years from a list of eligibles certified to him by the County Civil Service Commission. They are a part of the classified civil service within the meaning of the statute, and serve without compensation. The statute, in effect, provided that applicants for appointment in the classified service should be subject to examination which should be public, competitive, and free to all citizens of the United States, with specified limitations as to residence, age, health, habits, and moral character. The County Civil Service Commission was empowered to control all examinations and designate a suitable number of persons to be examiners who should conduct the examinations, and re-

port thereof to the Commission. The Commission is required to prepare a register of the persons whose general average standing is not less than the minimum fixed by the rules of the Commission, and who are otherwise eligible, and the applicants take rank upon the register in the order of their relative excellence as determined by the examination. Subdivision 23 of· section 61 of chapter 34 (J. & A. ¶ 2815) provides that the Commission "shall investigate the enforcement of this act and of its rules and the action of examiners herein provided for, with power to administer oaths and secure attendance of witnesses." An examination was held December 7, 1911, by a committee of physicians appointed by the Commission. The relator passed the examination with a marking of 75.5. For the relator it was successfully contended that upon his being notified of this fact he became entitled to have his name placed upon the list of eligibles and was entitled, in turn, to appointment by the county board. Before any register of eligibles was actually prepared or posted under its authority, numerous complaints were made by some members of the medical profession of unfairness in the methods pursued in calling and holding the examination, and in the marking of examination papers. The commissioners instituted a general investigation and appointed a committee of members of the medical profession of Cook county for the purpose, particularly of advising them in regard to the question as to the fairness and justice of the exam-, iners' markings, based on experience, which, under the rules governing such examinations, carried a maximum value of .4. This committee reported that it did not think that the Civil Service Commission would be justified in accepting the original markings, and, upon receiving this report, the Commission, at a meeting held September 3, 1912, passed a motion in which it recited that it had considered the matter of accepting

and posting the return of the examiners for the attending staff of Cook County Hospital, and the complaints of numerous applicants and members of the medical profession by letter and orally concerning the same, and that it found, (1) that the examination was divided in such a manner that the applicants who were entitled to take more than one of the thirteen separate tests could not do so because these tests were held simultaneously by the examiners; (2) that some of the tests were held for alleged places which do not and never did exist; and (3) that a special committee of physicians appointed by this Commission to investigate the experience markings in this examination had found after careful investigation that the standard of experience prescribed was wantonly departed from in numerous cases to the advantage of certain applicants, and that the committee had reported that they did not think the Civil Service Commission would be justified in accepting the original markings. The Commission unanimously ordered that the report of the examiners be rejected and set aside, and that new applications be received.

For the relator it is contended, among other things, that the commissioners had no power to enter this order, and that in doing so they were improperly influenced. The power of the commissioners must, of course, be determined by the terms of the statute, and we find that while commissioners are authorized to appoint examiners, the statute expressly directs that the commissioners shall control all the examinations, and later provides that they shall investigate the action of the examiners. The purpose of these provisions is clear. The provisions of the statute were intended to create conditions under which appointment to positions in the county service should be on the basis of merit. To this end a commission is created, charged with the duty of faithfully carrying out the

provisions of the statute, and in this work it is empowered to secure the assistance of examiners, but in that connection the statute makes it very plain that it shall retain the duty of controlling the examinations and investigating the action of the examiners whom they appoint. To say that it has these powers and duties and no power to set aside an examination, which in its opinion had been irregularly or improperly conducted, would be a distinct contradiction in terms. The legislators might, it is true, provide that the action of the examiners should not be subject to control or investigation, but they have not chosen to do so. We are of the opinion that it necessarily follows that when an investigation of the action of the examiners discloses facts which, in the opinion of the commissioners, convince them that an examination has been unfairly or improperly conducted, it is not only within their power, but it is their duty, under the statute, to set that examination aside. It may be argued that such a power invites abuse, but to this it may be answered that the power seems clearly and unmistakably given by the statute, and, moreover, it would seem that it is impossible to create a system for the appointment of public officials and employees, whose fair operation will not depend to some extent upon the fidelity of the commissioners appointed to supervise its workings.

In the present instance it is contended that the commissioners were improperly influenced and acted fraudulently and dishonestly. Upon the assumption that the trial court in this proceeding had power to pass upon that question, we have diligently examined the record and are of the opinion that the evidence fails to sustain the relator's contention. It is true that there is evidence which tends to show that the commissioners appointed an investigating committee for the purpose of getting a report that would give

them a definite reason for annulling the examination, but there is no evidence which tends in any way to show that the committee appointed to make the investigation was improperly selected or that it did not act honestly in the matter. The entire evidence, including that relied upon by the relator, leads to the logical conclusion that the commissioners' own investigation had convinced them that the examination had been improperly and unfairly conducted, and that they appointed a committee of high-minded and disinterested physicians to make an independent investigation, in the confident belief that they would arrive at the same conclusion.

As we are of the opinion that it was within the power of the Commission to set aside the examination of December 7, 1911, and that as there is no evidence to sustain the contention that the Commission was improperly influenced or acted fraudulently or dishonestly, there is no ground upon which the action of the trial court in awarding a writ of mandamus can be sustained. The judgment of the Circuit Court is reversed.

*Reversed.*