People of State of Illinois ex rel. James J. Clark et al., Appellees, v. Stephen E. Hurley et al., Appellants.

Gen. No. 45,153.

filed April 9, 1951. Rehearing denied April 27, 1951. Released for publication May 7, 1951.

JOHN J. MORTIMER, Acting Corporation Counsel, of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, and SYDNEY R. DREBIN, Assistant Corporation Counsel, both of Chicago.

MICHAEL F. RYAN, of Chicago, for appellees; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Judgment was entered in the superior court of Cook county on December 6, 1949, for a writ of mandamus directing the Civil Service Commission of the City of Chicago to cancel the eligible register created by an examination held for "lineman" on October 28, 1947, established and posted by the Civil Service Commission on or about June 2, 1948, to expunge from the records of the Civil Service Commission the results of the examination and to cancel and nullify any action taken, or certification made, as a result of said examination; and ordering the Commission within 90 days from the date of the judgment to hold an original entrance examination for the filling of vacancies in the position of lineman in the classified service of the City of Chicago. From this judgment order defendants appeal.

Plaintiffs' claim to remedy by mandamus is based upon these principal contentions: (1) that the original

examination held on October 28, 1947, is void and contrary to the statute in that it did not relate to matters which would fairly test the relative capacity of the person examined to discharge duties of lineman and did not have any test of manual skill although such test was proper; (2) that the test was not truly competitive because in calculating the mark for ''Experience'' in said examination one point was taken off for each year of the applicant's age over thirty-five, although no previous notice of such procedure had been given and no maximum age limitation had been fixed in the call and notice for such examination; (3) that the examiners were all members of the same political party in violation of the statute; and that for these reasons any certifications and appointments made from the eligible list were void.

The evidence discloses that on October 2, 1947, the Civil Service Commission of the City of Chicago issued a call for an original examination to be held on October 28, 1947, for the filling of vacancies in the position of lineman in the classified service of the City of Chicago. The call described the duties of lineman. It set forth that the scope of the examination would be Special Subjects (5), Experience (3), and Physical (2). The plaintiffs and sixty-four other persons represented by them had been performing duties as linemen under temporary appointments for a number of years prior to the examination.

The questions used in the examination were the same as those used by different civil service commissions throughout the United States, and were procured by the Chief Examiner of the Commission, James S. Osborne, from the Civil Service Assembly of the United States and Canada. They were prepared by the Commission with the help of one Ward Hannegan, an employee of the. Department of Streets and Electricity of the City of Chicago, and one Joseph Fleischer, an employee of the City of Chicago in the Bureau of Elec-

tricity. Neither of these employees graded the papers or did anything other than assist in the preparation of the questions.

The minutes of the Commission show that a total mark of 100 was given for "Experience," allocated by giving Education 15, Practical Experience 70, and Other Experience tending to qualify 15; and provided further that for every year the applicant was over 35 years of age one point should be deducted from the total grade received by the applicant for "Experience." It is not disputed that this procedure had been followed for the past 40 years and that it is a formula that has been adopted by every civil service commission in the country for marking "Experience."

The proof further showed that certain weights were given to the various subjects on the examination: Special Subjects (written examination) being given a weight of 5, Experience a weight of 3 and Physical a weight of 2; that the deduction of one point a year pertained only to Experience, and therefore if an applicant got 100 in the written examination and 100 in the physical examination, or a total weight of 7, he would receive a passing grade of 70 irrespective of age.

■ The Civil Service Commission has never kept minutes of an examination giving notice of detailed tests, seniority, efficiency and experience; there was no rule requiring the Commission to give such notice and the practice had been not to specify in detail the points to be considered in rating applicants.

The section of the statute under which the examination was held, section 6 of an Act to regulate civil service of cities (Ill. Rev. Stat. 1949, chapter 24 1/2, paragraph 44) [Jones Ill. Stats. Ann. 23.045], provides in part:

"All applicants for offices or places in said classified service . . . shall be subject to examination, which shall be public, competitive, and open to all citizens of

the United States, with specified limitations as to residence, age, health, habits and moral character. . . . Such examinations shall be practical in their character, and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include tests of physical qualifications and health, and when appropriate of manual skill. . . . The commission shall control all examinations and may . . . designate a suitable number of persons . . . to be examiners. . . . The examiners at any examination shall not all be members of the same political party.''

█ The statute, it is to be noted, says that a test of manual skill shall be given when appropriate, and it leaves to the discretion of the Civil Service Commission the determination of such appropriateness. Plaintiffs urge that the determination of appropriateness of a test of manual skill is not wholly within the Civil Service Commission's discretion and that under the facts of this case it was proper and necessary for the Civil Service Commission to include a test of manual skill. While it is true that the courts have a right to review the decisions of the Civil Service Commission for the purpose of determining whether or not there has been an abuse of discretion, the law is well established that unless such discretion is exercised in such an unreasonable manner as to indicate fraud or arbitrariness, the courts have no right to interfere with the findings of the Commission. In the case of *People v. Allman,* 382 Ill. 156, in discussing the discretionary powers of the Civil Service Commission, the court said (p. 164):

''Before a *mandamus* writ may issue it must clearly appear that the petitioner has a clear right to the relief he seeks. (*Stott v. City of Chicago,* 205 Ill. 281; *Swift v. Klein,* 163 id. 269.) If the administrative body or

187

inferior tribunal has acted without power, then *mandamus* is the proper remedy to expunge the void orders from its record. (*People v. Shurtleff, supra; People v. LaBuy, supra; People ex rel. Waver v. Wells,* 255 Ill. 450.) It is not a writ of right. (*People ex rel. Beardsley v. City of Rock Island,* 215 Ill. 488; *People ex rel. Akin v. Board of Supervisors,* 185 id. 288.) Admittedly, *mandamus* does not lie to control or review the discretion of an inferior tribunal (*People ex rel. Brachear v. Board of Supervisors,* 308 Ill. 543; *People ex rel. Thatcher v. Village of Hyde Park,* 117 id. 462,) and in *mandamus* actions against administrative officers, such as the commission in this case, the courts will not inquire into the merits of the matter that it may substitute its own judgment or discretion for that of the administrative body. (*People ex rel. Miller v. City of Chicago,* 234 Ill. 416.) In this latter case it was said: 'Where acts and duties necessarily call for the exercise of judgment and discretion on the part of an officer body or person at whose hands performance is required, *mandamus* will not lie to direct how such discretion shall be exercised.' "

Obviously the legislature intended to bestow on the Civil Service Commission wide latitude in determining whether or not a manual test should be given. The statute does not indicate, even within broad limits, when such a test would be appropriate, but has left it to the discretion of the Commission. In the case of *Drury v. Hurley,* 339 Ill. App. 33, this court said (pp. 41, 42):

"It follows, that since the statute does not define 'cause' the legislature, as apparently recognized by the courts, left its definition and application to the discretion of the commission which, under section 12 of the Civil Service Act, was thus empowered to determine, not merely what cause is sufficient to justify removal, but also whether or not the accused was guilty

188

of the cause charged. Accordingly, we think the trial judge exceeded his authority in reviewing the commission's finding that a refusal to sign a waiver was 'cause' for dismissal. Inasmuch as the commission was established to administer the personnel affairs of the city and is charged with the duty of holding hearings to determine whether there is adequate cause for removal, courts should not reverse the commission's findings of 'cause' unless the finding is so unrelated to the requirements of the service that it is unreasonable and, therefore, arbitrary.''

■ From a review of the entire record in this case, in the light of the authorities, we are of the opinion that we have no right to substitute our judgment for that of the Civil Service Commission by a contrary finding or to say that the statute so clearly requires a manual test as to make the remedy of mandamus appropriate.

In support of their position that the action of the Civil Service Commission was arbitrary, plaintiffs cite the case of *People ex rel. Williams v. Errant,* 229 Ill. 56. In that case the Civil Service Act and Rules and Regulations of the Commission specifically provided that a promotional examination must be given if there are persons in a lower rank who are desirous of taking such examination, and it was held that the statute left the Commission no discretion as to holding an examination. In the instant case, however, the statute leaves to the Commission the determination of the question of appropriateness of the test of manual skill. In *Murphy v. Houston,* 250 Ill. App. 385, and *People ex rel. Fosse v. Allman,* 329 Ill. App. 296, also cited by plaintiffs on this point, it was held that the courts may review the record to determine whether a civil service employee was removed for cause as provided under section 12. Granted that the courts are empowered to undertake such review, the bounds within which the inquiry is

confined have been clearly indicated in reviewed cases. *Drury v. Hurley,* above, points out the scope of the inquiry, holding that the finding of the Commission should not be disturbed unless it is so unrelated to the requirements of the service as to be unreasonable and arbitrary. We do not consider cases cited by plaintiffs applicable to the facts in the case before us. The conclusion here arrived at is supported by *Getty v. Witter,* 107 Colo. 302, 111 P. (2d) 636, where the court, refusing to set aside a civil service examination, said (pp. 638, 639):

"Discretion to administer the provisions of the civil service law necessarily must be lodged somewhere. Our Constitution places this responsibility in the commission. Whether its administration is good or bad, is generally not a judicial, but an executive, problem. . . . There are some matters which those clothed with executive and administrative power alone can correct. Eventually everything functions through human beings, and unless those who have the responsibility function properly and efficiently, maladjustments in governmental processes occur, most of which do not come under judicial control. . . .

". . . Here we are not concerned with a refusal to act, but with the manner in which the commission has acted. In that field it is presumed that the commission has comprehensive experience and knowledge and therefore is vested with wide discretion, and only when its exercise of power clearly is arbitrary and capricious can there be judicial interference."

Plaintiffs complain that the manner of marking "Experience" was unfair, discriminatory and arbitrary. They contend that, since most of the plaintiffs and the class represented by them were over thirty-five years of age at the time of the examination, they were deprived of a chance to compete on equal terms with younger participants. What we have said above

as to the discretion of the Civil Service Commission in determining the appropriateness of a manual test applies with equal force to this contention. Section 4 of Regulation VI of the Rules and Regulations of the Civil Service Commission relating to the grading of "Experience" in examination papers provides as follows:

"4. The term 'experience' shall be understood to mean training tending to qualify an applicant to perform the duties of the position to be filled. The following points shall be considered with reference to the requirements of the position: Age, education, practical and theoretical training, nature and length of employment, success attained, salary or compensation of positions held, extent of supervision over the work of others, and other information tending to show the applicant's qualifications."

■ The evidence shows that this regulation has been in effect for at least thirty-five years and that the factor of "Experience," so defined, has been used in civil service examinations for over forty years. It was apparently the intention of the legislature to vest with the Commission discretion of determining the standards of eligibility for this position. The duties of lineman require considerable agility and physical strength for their proper performance. They include the digging of post holes, climbing and working at the top of telegraph poles, cutting up crossbeams at the top of such poles, and other arduous physical assignments, for which, all things being equal, younger men are more apt to be fitted than their elders. The physical requirements for this position are much more stringent than those for clerical or routine work. While a man well along in years undoubtedly has an extraordinary amount of valuable experience, still, because of the lack of physical capacity, he might have become entirely unfitted for this kind of work. The "Experi-

191

ence'' rule did not fix a maximum age limit which would of necessity bar certain individuals from taking the examination, although the Commission unquestionably had the power to fix a maximum age requirement, but gave to applicants over thirty-five years of age an opportunity to pass notwithstanding the age handicap if they had sufficient knowledge and were otherwise physically fit. In the case of *People v. City of Chicago*, 131 Ill. App. 266, a petition for mandamus was filed to nullify an examination for the office of assistant superintendent of police, alleging that improper influences were brought to bear in behalf of one of the candidates for the examination. The court refused to set the examination aside, saying (p. 272):

''Some discretion is vested by the act in the commission, which the court may not question in this proceeding. . . . It was, we think, fairly within the discretion of the commission to determine whether the examination for police officers should include certain physical and other tests, and this discretion will not ordinarily be controlled by the court.''

We do not find that the Civil Service Commission was in the instant case guilty of any arbitrary, capricious or fraudulent conduct which would justify the interference of the court in its methods of procedure.

█ Finally, plaintiffs argue that the examination is void for the reason that the examiners for the lineman examination were all members of the same political party in violation of section 6 *supra*. The undisputed testimony is to the effect that there were no minutes or order entered by the Commission authorizing the examiners for this examination and that none were appointed. It is true that Messrs. Fleischer and Hannegan aided the Commission in selecting certain technical questions, which questions had been received from the Civil Service Assembly, but that was the extent of their service in the matter. Thomas Kil-

192

dough and Thomas Keon, who graded the papers, were given a key copy with the correct answers marked thereon, but had no discretion in the matter. These men, as well as certain others, performed only clerical work, and were not nominally, or by virtue of the nature of their services, examiners. We do not think that it was the intention of the legislature to require all clerical and advisory work performed in connection with a civil service examination to be done by the Commissioners or by examiners appointed by said Commissioners.

The lineman examination was conducted by the Civil Service Commission without the appointment of examiners. That being so, it was immaterial what political affiliations those individuals had who assisted in clerical or nondiscretionary capacities.

It has frequently been held by our courts that the writ of mandamus should not issue unless the right to the writ is clear. We are of the opinion that no such clear showing has been made in this case.

The judgment of the Superior Court of Cook County is reversed.

*Reversed.*

NIEMEYER, P. J. and FEINBERG, J., concur.