**People of the State of Illinois ex rel. Ellsworth Erickson, et al., Plaintiffs-Appellants, v. Dolores Sheehan, et al., Defendants-Appellees.**

**Gen. No. 47,768.**

First District, First Division.

November 30, 1959.

Rehearing denied December 16, 1959.

Released for publication February 9, 1960.

Murphy, Pearson, and O'Connor, of Chicago (Walter William Pearson, of counsel) for Ellsworth Erickson, et al., plaintiffs-appellants.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin, Harry H. Pollack, Assistant Corporation Counsel, of counsel) for appellees.

Thomas D. Nash, Jr., of Chicago, for intervenors-appellees.

JUSTICE SCHWARTZ delivered the opinion of the court.

Two suits, one for a writ of prohibition and one for mandamus, were filed by plaintiffs and were consolidated in the trial court. Defendants moved for a judgment on the pleadings. That motion was sustained and the suits dismissed, from which order this appeal was taken.

The petition for writ of prohibition sought to prevent the Civil Service Commission of the city of Chicago from certifying the names of persons for promotion to the rank of police captain from a promotional register published by the commission on December 29, 1958. The petition for writ of mandamus sought to order the commission to expunge the 1958 register and the examination upon which it was based and to compel the publication of a register of eligible persons who passed an examination held December 4, 1954. The basic issue presented to us is whether the Civil Service Commission could lawfully expunge the promotional examination held December 4, 1954, leaving it free to hold the 1958 examination.

Relators, to whom we shall hereinafter refer as plaintiffs, are seventeen police lieutenants of the city of Chicago who had taken the 1954 examination. De-

46

fendants are the Commissioners and the Secretary of the Civil Service Commission. Intervenors are twenty-seven police lieutenants whose names appear on the promotional register resulting from the 1958 examination. No list from the 1954 examination has ever been published, and plaintiffs do not know whether they passed that examination.

Plaintiffs contend that the commission has only such power as is delegated to it by the Civil Service Act; that the power to cancel an examination and an unpublished register is not granted to it by the Act and that, therefore, the order cancelling the 1954 examination was void and the 1954 list must be posted. This turns on the construction of Section 48, Ch. 24½, Ill. Rev. Stat. (1959) (Civil Service Act), which reads as follows: "Said Commission may strike off names of candidates from the register after they have remained thereon more than two years." It is plaintiffs' contention that this means that the commission can strike the names of candidates only after the list has been published. Nowhere in this section is the word "register" qualified or modified by the words "posted" or "published."

The policy behind this provision is to maintain an up-to-date register, the vitality of which may be guaranteed by the discretion placed in the commission to meet changing conditions and circumstances. Toward that end, the commission is authorized to strike a register which is no longer suitable to fulfill the function for which it was intended. That policy applies whether a promotional register is published or not.

Plaintiffs argue that if we allow the commission to strike down an unprepared, unpublished register, then it can strike down the results of any examination merely by refusing to publish the resultant register. The history of the 1954 register must be kept before

47

us in our consideration of that argument. The commission did not arbitrarily refuse to publish a register resulting from the 1954 examination, as the history of the long and involved litigation concerning that examination will disclose. From the time the 1954 examination was given, it has been involved in four lawsuits, two of which have previously reached this court: Malkin v. City of Chicago, 6 Ill.App.2d 151, 127 N.E.2d 145 (1955), and Sullivan v. Sheehan, 20 Ill.App.2d 380, 156 N.E.2d 374 (1959). In Malkin v. City of Chicago, supra, police lieutenants who had been listed in a promotional register posted July 30, 1951, obtained an injunction on August 14, 1954, restraining the commission from cancelling the 1951 register. That injunction remained in effect until this court on May 13, 1955, reversed the trial court's decision, 6 Ill.App.2d 151, 127 N.E.2d 145, holding *inter alia,* that the commission's discretion governed the question of whether or not the 1951 register should be continued, citing as authority section 48 of the statute, which in effect dissolved the injunction.

On December 21, 1954, the commission advised plaintiffs that they were prevented from posting the list because of the injunction secured in the Malkin case. On March 14, 1955, the suit of People ex rel. Lawler v. Hurley was filed in the Circuit Court No. 55 C 4113, by candidates on the then published 1951 police captain promotional register, seeking a declaratory judgment to the effect that the 1954 examination was void. That suit was dismissed as moot on February 27, 1958, since all candidates on the 1951 promotional register had been promoted.

On August 26, 1957, the Superior court, in Sullivan v. Sheehan, No. 57 S 12694, entered a temporary injunction restraining the commission from publishing the 1954 promotional register. That was followed by a vacation of the injunction on November 1, 1957, and

48

an order of court of January 29, 1958, declaring that the commission had authority to and should expunge the 1954 promotional register and examination. On January 30, 1958, the commission by order expunged the 1954 promotional examination and register and announced that a new examination for police captain would be held commencing February 27, 1958. On February 16, 1959, we reversed the order of the trial court in Sullivan v. Sheehan, supra, and held that the plaintiffs in that cause had received all the relief prayed for in their complaint, the case thereby becoming moot. However, we directed the trial court to dismiss the complaint so that its order directing the Civil Service Commission to expunge the 1954 examination would not have the force of *res judicata.* 20 Ill.App.2d 380, 156 N.E.2d 374. We have given the history of this litigation since it reveals the circumstances under which the commission acted.

In considering plaintiffs' argument that to sustain the commission's action in striking the 1954 register makes it possible for competitive examinations to be ignored by mere inaction, we cannot assume that a coordinate branch of the government will be faithless in the discharge of its statutory duties. In People ex rel. Heineck v. Holding, 207 Ill. App. 38 (1917), at page 42, the court, referring to a similar argument made in that case, said:

"It may be argued that such a power invites abuse, but to this it may be answered that the power seems clearly and unmistakably given by the statute, and, moreover, it would seem that it is impossible to create a system for the appointment of public officials and employees, whose fair operation will not depend to some extent upon the fidelity of the commissioners appointed to supervise its workings."

Section 44 (Ill. Rev. Stat. Ch. 24½ (1959)) places control of examinations in the hands of the

commissioners, and Section 53 grants the commission a general power to investigate the enforcement of the Act, the commission's rules, its staff and the conduct of civil service appointees. Plaintiffs maintain that the latter section, the investigatory warrant of the statute, apparently was designed to enable the commission to assemble data in order to make suggestions for more effective accomplishment of the purposes of the Act in its annual report to the City Council. Our courts have held that this is one of the offices of that section. People ex rel. Baird v. Stevenson, 270 Ill. 569, 110 N. E. 814 (1915); People ex rel. Gilbert v. Hurley, 336 Ill. App. 205, 83 N.E.2d 512 (1948). However, such is not the sole function of Section 53. In People ex rel. Heineck v. Holding, supra, the court had before it a similar question with regard to the commission's power to cancel an examination which it found had been improperly conducted. In interpreting a statute similar to our present Sections 44 and 53, that court said, at pages 41-2:

"The power of the commissioners must, of course, be determined by the terms of the statute, and we find that while commissioners are authorized to appoint examiners, the statute expressly directs that the commissioners shall control all the examinations, and later provides that they shall investigate the action of the examiners. The purpose of these provisions is clear. The provisions of the statute were intended to create conditions under which appointment to positions in the county service should be on the basis of merit. To this end a commission is created, charged with the duty of faithfully carrying out the provisions of the statute. . . . To say that it has these powers and duties and no power to set aside an examination, which in its opinion had been *irregularly* or *improperly* conducted, would be a distinct contradiction in terms. . . . We are of the opinion that it necessarily fol-

lows that when an investigation of the action of the examiners discloses facts which, in the opinion of the commissioners, convince them that an examination has been *unfairly* or *improperly* conducted, it is not only within their power, but it is their duty, under the statute, to set that examination aside." (Emphasis supplied.)

The foregoing language is germane to the instant case. The commission had jurisdiction to expunge a register such as the one here in question, not only on the ground of unfairness or impropriety, but as well on the ground of "staleness."

■ The next question to be considered is whether the commission acted fraudulently or arbitrarily in concluding that the 1954 examination had not been conducted in accordance with its standards of fairness and propriety so as to justify interference by a court. People ex rel. Clark v. Hurley, 343 Ill. App. 182, 98 N.E.2d 596 (1951). The commission's minutes of January 30, 1958, attached as an exhibit to defendants' pleadings, listed various reasons in support of its conclusion that the examination was conducted irregularly and improperly. The following facts were shown: its former president had submitted questions to applicants without the commission's examination or approval; the examination was given solely by the president who appointed himself as examiner in the proceedings; the questions and the applicants' answers were held in his personal possession for over two months, without depositing them with the person in whose possession they were charged by the rules to be; efficiency marks used by him in computing final grade averages were not in accordance with the Performance Rating Guide published by the commission and then in full force and effect, and any substitution for such guide should have been approved by the commission, which was not done. No question of integrity

51

or devotion to duty on the part of the president is suggested. The conclusion of the commission was based entirely on failure to comply with the requirements of the law and the commission's regulations.

■ Plaintiffs argue that the fraud, unfairness, impropriety or irregularity which the commission must find in order to cancel an examination must relate to the conduct of the examination, evidently meaning by "conduct," the actual giving of the examination. This, they say, is the proper construction of People ex rel. Heineck v. Holding, supra. We do not place such a narrow construction on either the statute or the decision in the Heineck case. The statute, rules and regulations which pertain to the commission's control of the examination relate as well to matters which occur subsequent to the examination, and these can be as important as those arising from the actual giving of the examination. Plaintiffs argue that two of the commissioners were in office at the time of the examination and did nothing to protest its impropriety until the trial court, three years later, declared in Sullivan v. Sheehan, supra, that the commission had authority to expunge the examination and therefore should do so. The commission is under a duty to expunge an examination and register when it finds that such examination was unfairly or improperly conducted. People ex rel. Heineck v. Holding, supra. Because it delayed taking such action it was not precluded from exercising its duty to do so when that appeared proper.

■ Plaintiffs argue that nothing in the statute requires that the commission as a body approve questions to be submitted to applicants, but had the commission so desired it could have done so. Further, plaintiffs say, a single commissioner had express stat-

52

utory power to conduct an examination. The pertinent language of the statute reads as follows:

"The commission shall control all examinations and may . . . designate a suitable number of persons . . . to be examiners, and it shall be the duty of such examiners . . . to conduct such examination as the commission may direct, and to make return or report thereof to said commission, and the commission may at any time substitute any other person, whether or not in such service, in the place of any one so selected; and the commission may themselves at any time act as such examiners, and without appointing examiners. The examiners at any examination shall not all be members of the same political party." Ill. Rev. Stat., ch. 24½, sec. 44 (1959).

The statute refers in several places to conduct of the examination *by the commission* and, more specifically, that *"the commission may themselves . . . act as such examiners."* It should also be noted that it requires that the examiners shall not all be members of the same political party. It is apparent that the legislature intended action to be taken by the commission as a body and not as members acting unilaterally.

The case of McKenna v. South Park Com'rs, 198 Ill. App. 369 (1917) (memorandum decision), cited by plaintiffs, is not relevant. In that case charges were filed against a patrolman. He was tried before a single Commissioner. The statute read: "charges shall be investigated by or before the Civil Service Board or by or before some *officer* or officers appointed by the Board to conduct such investigation. . . ." (Emphasis supplied.) The court held that such a hearing could be conducted by a single officer, as from the language of the statute before cited, it no doubt could.

53

We find no evidence of fraud or arbitrariness in the commission's decision to expunge the 1954 examination.

■ There are other reasons why we must sustain the trial court's decision. The 1958 register has been published and six police lieutenants have been promoted from that list to the rank of police captain. In the action before us, seventeen police lieutenants are arrayed as plaintiffs, seeking to maintain the 1954 list, against twenty-seven police lieutenants who, as intervenors, are seeking to maintain the 1958 list. The effect on the discipline of the police department that can result from such a contest cannot be exaggerated. In fields such as this, courts must recognize that the relationship of the executive department to its employees is involved and that the discipline of an entire department may be affected. A writ of mandamus is discretionary and, as stated in People ex rel. Harty v. Gulley, 2 Ill.App.2d 321, 119 N.E.2d 540 (1954), it will not be awarded where the result will cause undue confusion.

■ ■ Discipline is vital in the police department which constitutes a force of armed men organized to protect the city. The offices of mayor, chief of police and civil service commission constitute branches of the executive department charged with the maintenance of discipline in this group of armed men. Courts must move with great care and caution before they set aside the acts of the executive department of the government under any circumstances, but especially in matters such as this. In the instant case there is not the slightest evidence that politics or bias motivated the administration of the civil service, nor do we find that any law, formal or substantive, was violated. Having found that the commission had power to strike

the 1954 register and that it did not act arbitrarily, it is unnecessary for us to discuss the other questions raised by the respective parties.

Judgment affirmed.

DEMPSEY, P. J. and McCORMICK, J., concur.