[Civ. No. 7412. Fifth Dist. June 1, 1984.]

RICHARD C. COX et al., Plaintiffs and Respondents, v.
KERN COUNTY CIVIL SERVICE COMMISSION et al.,
Defendants and Appellants.

**[Opinion certified for partial publication.†]**

†Parts III and IV are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Ralph B. Jordan, County Counsel, and Robert A. Sams, Deputy County Counsel, for Defendants and Appellants.

Silver & Kreisler, Charles A. Goldwasser and David J. Duchrow for Plaintiffs and Respondents.

**OPINION**

**ANDREEN, J.**—Upon learning that there was cheating by unspecified persons on one of its examinations, may a civil service commission invalidate the resultant promotional list without proof that a particular examinee cheated? We hold that it may.

Petitioners (hereinafter plaintiffs) are deputy sheriffs in Kern County who gained positions on an eligible list for promotion to senior deputy sheriff by taking a competitive examination. They brought this writ of mandate to compel the respondents (hereinafter defendants) Kern County Civil Service Commission (hereinafter commission), the County of Kern, and E. Dean Holloway, Interim Director of Personnel for Kern County, to reinstate the list.

After a hearing, the lower court granted the petition and ordered the defendants to reinstate the disputed eligible list.

## I. Facts

At the outset of the hearing held on May 7, 1982, the trial court admitted into evidence the verified petition for writ of mandate with supporting documents and related pleadings. Since little additional evidence was adduced during that hearing, our summary is largely based upon information contained in the clerk's transcript on appeal and stipulations made during trial.

■■■ On October 6, 1981, the personnel department of Kern County announced a promotional examination for the position of senior deputy sheriff consisting of a written test and an interview. Plaintiffs submitted applications, took the written test (on Nov. 20, 1981) and were interviewed, resulting in their being "certified for promotion," i.e., placed on a list of those eligible for consideration for the advertised position.

At a meeting of the commission held on January 11, 1982, evidence was presented that the written test given on November 20, 1981, had been "compromised." A partial copy of the written test with the correct answers had been reviewed by unidentified examinees prior to the examination. The commission voted to invalidate the eligible list previously established and to administer a new test in order to establish an eligible list untainted by cheating.

This litigation followed, in which the issue presented to the trial court was a narrow one—whether the commission had the implied power to invalidate the list of eligibles absent proof that the plaintiff officers had themselves cheated on the examination. There was no evidence introduced below as to how the cheating was accomplished or how pervasive it was. We set forth in the margin the colloquy between court and counsel as to the known facts of cheating.[1] There was no contention made below, either in the briefs

---

[1] "THE COURT: As I heard the arguments at our last hearing on demurrers, I understood Mr. Goldwasser to say that this was a fairly clear cut case where you are simply challenging the authority of the Civil Service Commission to invalidate the entire test, even assuming that there was evidence of some cheating by some participants in the test. Was that your position? Did I understand that correctly?

"MR. GOLDWASSER: Yes, your Honor.

"THE COURT: So we can assume for purposes of argument that there was good and sufficient evidence that there was some cheating involved in the test by somebody?

"MR. GOLDWASSER: (Nods affirmatively.)

". . . . . . . . . . . . . . . . . . .

"THE COURT: How far would you be willing to go to stipulate as to this cheating issue?

"MR. GOLDWASSER: Well, your Honor, I told Mr. Sams on the telephone I don't think it is relevant, and that's why I am very concerned about stipulating to something that I don't see as a relevant fact. I think that the Commission—Mr. Sams at one point just indicated what the concern is—and that is whether or not the Commission had the power to do what they did. The Court characterized it properly. That is obvious from the pleadings. In fact, in reviewing my petition prior to discussing this matter with Mr. Sams on the telephone I

filed or in oral argument, that it was possible to identify those officers who had utilized the crib sheet in their preparation for the exam.

## II. DOES THE COMMISSION HAVE THE IMPLIED POWER TO INVALIDATE AN ELIGIBILITY LIST FOR GOOD CAUSE?

■ Defendants concede that no express rule of the commission permits the invalidation of an entire eligibility list for cause prior to six months after the list has been in effect. They assert, however, that such a power to invalidate must be implied from the objects and purposes of the legislation creating the commission, especially the mandate that county employment be governed by principles of merit. Plaintiffs contend that the enumerated procedures for removing individuals from eligibility lists for cause sufficiently advance the merit goals of the civil service system so that it is not necessary to imply any additional power such as that claimed by the commission.

Decisional law relating to the implied powers of administrative agencies is not entirely coherent—some cases use very expansive language while others carefully circumscribe permissible implications. In *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486 [138 Cal.Rptr. 185], one of the few cases to deny an agency an implied power, the Department of Motor Vehicles (DMV) directed an automobile auctioning company to deliver certain of its business records to the DMV in connection with an investigation conducted by that agency. (*Id.,* at p. 491.) The auto seller refused, and sought declaratory relief, which was granted by the trial court. (*Ibid.*) The Court of Appeal affirmed. It noted that section 320 of the Vehicle Code, which provided for inspection of "pertinent records," by its

---

indicated that we allege, we made the positive allegation that the Commission acted upon the finding that the test was compromised, and I am willing to live with that, the positive allegation. I am not prepared to go into exploring the basis for the Commission's finding. I don't think that it is relevant to this issue.

" . . . . . . . . . . . . . . . . . .

"THE COURT: Well, he simply is not attacking the finding. Unless that finding is attacked by some evidence, I intend to make a finding that the finding of the Commission is presumed to be supported by sufficient evidence that was brought before them, and then tackle the rather narrow legal issues that are being inserted. That might save you some time.

"MR. SAMS: Your Honor, I am not sure but that might save us a lot more time than I thought because the purpose of the sheriff and possibly Sgt. Kent was to present more of the evidence as to what actually was presented to the Commission that night. I do have the personnel director here to explain and to testify to the Court the operations of the Personnel Department vis-a-vis the appointing authority, the sheriff.

"There is other testimony to be presented, but as far as if the ruling is going to be made, the finding, or the finding of the Commission is not going to be attacked, sufficiency is going to be accepted. I don't know that I need to go into this.

"THE COURT: This is how I intend to proceed unless of course Mr. Goldwasser decides to question the sufficiency of the evidence to support that finding, then at a later time of course you are entitled to bring in the evidence."

terms referred only to an automobile dealer licensee who maintains more than one type of business from the same establishment. Had the Legislature desired the DMV to have authority to inspect all automobile dealerships, it would have so provided. Vehicle Code section 11714, subdivision (c) provided that the DMV would furnish books and records which remain the property of the department and may be taken up at any time for inspection, but both parties conceded that this gave DMV only limited power. The panel declined to imply a power to inspect the business records of the licensee. In response to DMV's argument that such a power of inspection should be implied from statutes requiring it to discipline auto dealers who knowingly purchased stolen cars, failed to file required forms, or defrauded consumers, the appellate court found that as to each statutory duty imposed on DMV, the Legislature had provided a concomitant enforcement mechanism sufficient to permit DMV to perform it. (*Id.,* at pp. 498-499.) The court stated: "While the DMV has cited examples where the power to inspect any and all business records of a dealer would serve some useful purpose, it has not shown that such inspection power is indispensable to the enforcement of the Vehicle Code. Accordingly, this court should not find that the DMV has unrestricted powers to inspect business records by way of implication." (*Id.,* at p. 499.)

The present case is unlike *Addison* in that the authorizing ordinance does not contain well-delineated enforcement mechanisms like those which the appellate court in *Addison* relied upon as evidence that the asserted implied power was not indispensable. Section I of Kern County Ordinance No. A-126 sets forth the objectives and purposes of creation of the commission: "[T]o establish an equitable and uniform procedure for dealing with personnel . . . and . . . to place county employment upon a merit basis . . . ." Section VII of that ordinance commands the commission to "prescribe rules and regulations for the operation of the civil service system . . ." which shall govern specified employment matters, including, "(h) [t]he establishment of eligible lists . . . . Such lists shall remain in force for not less than six (6) months nor more than two (2) years to be determined by the Civil Service Commission." No particular manner of accomplishing the stated goal of placing county employment on a merit basis to the establishment of eligible lists is specified in the ordinance, it being left to the discretion of the commission to enact rules which would provide the necessary procedures.

The commission did enact detailed rules providing a mechanism for removing individuals from eligibility lists for cause (rule V-I), and for refusing to place an individual on an eligible list (rules III-F, III-G and IV-E). Had the commission enacted a rule which permitted it to invalidate an entire eligible list for good cause, the existence of other commission-promulgated

rules dealing with removal of *individuals* from lists would have no bearing upon the validity of the "entire list invalidation" rule—the court would still look to Ordinance No. A-126 to determine whether the power to adopt such a rule was indispensable to effectuation of the objects and purposes of the civil service system.

■ Inherent in the concept of the merit based civil service is that accurate and effective measures exist for assessing "merit." Where the standards for promotion include an examination testing the job related knowledge of potential promotees, cheating on the examination would skew the testing process and completely frustrate the goal of selecting the most qualified individuals. Where there is sufficient evidence that *someone* has cheated on an examination, but insufficient evidence to successfully identify and remove from the resulting eligible list specific cheaters, the commission should not have to rely upon the appointing authority to categorically refuse to accept any eligibles (as the sheriff apparently did here) as the only method to insure that no cheater is certified and accepted for promotion. The power to invalidate a tainted eligible list can thus be seen as indispensable to the civil service system, especially so where the examination at which cheating occurred involved testing those entrusted with the power and responsibility to enforce society's laws.

The cases which have upheld assertions of implied powers support this analysis. In *County of San Joaquin v. Stockton Swim Club* (1974) 42 Cal.App.3d 968 [117 Cal.Rptr. 300], a recreation commission entered into an agreement with a swim club to permit the latter to use a public swimming pool. (*Id.,* at p. 971.) The commission required that the swim club execute an indemnity agreement protecting the public agencies against any losses or liability arising from use of the pool. (*Ibid.*) When a child was injured while swimming and sued the public agencies, they sought indemnity against the swim club and were awarded complete relief including costs of defense. (*Ibid.*) On appeal, the Court of Appeal rejected the swim club's contention that the recreation commission lacked the power to require an indemnity agreement as a condition for use of the facilities: "Public agencies possess not only expressly granted powers but also such implied powers as are necessary or reasonably appropriate to the accomplishment of their express powers. [Citations.] The demand for a hold-harmless agreement as a condition for Swim Club's use of publicly owned property was reasonably appropriate to the exercise of the Commission's authority to permit that use." (*Id.,* at p. 972.)

In *Baker v. Wadsworth* (1970) 6 Cal.App.3d 253 [85 Cal.Rptr. 880], unionized employees of the County of Los Angeles sought a writ of mandate to compel reinstatement of seniority rights they had lost when they were

terminated after refusing to report to work for seven days during a strike by other noncounty union employees. (*Id.*, at pp. 257-260.) The civil service commission had acted pursuant to its own rule providing that unapproved absence from a position for seven or more days constituted abandonment of the position. (*Id.*, at p. 258.) In upholding denial of the writ in the face of the employees' challenge to the authority of the commission to adopt the seven-day abandonment rule, the appellate court stated: "Although authority to adopt the rule was not expressly conferred in so many words by the [enabling statute], the authority is implied in the broad discretionary power of the Commission to administer and enforce the civil service laws. [Citations.] The Commission was thus empowered to adopt reasonable rules and regulations that it deemed necessary to the efficient exercise of the powers expressly granted by the charter. [Citation.] The provisions of the [enabling statute] were not intended to cover the entire civil service system, but only to establish policies and standards to be carried out in detail by the Commission . . . ." (*Id.*, at p. 261.)

In a case with some similarity to the present matter, *Higgins* v. *Lynch* (1946) 72 Cal.App.2d 526 [164 P.2d 943], a captain in the fire department of the defendant city was the only person on an eligible list for promotion to assistant fire chief, but the appointing authority rejected him and made a temporary selection until another eligible list could be established. (*Id.*, at pp. 527-529.) The rejected captain sought mandamus to compel his selection to the position, contending that the appointing authority had no power to make a temporary appointment when a valid eligible list existed for the vacant position. (*Id.*, at p. 530.) Affirming denial of mandamus, the Court of Appeal held that, "it is quite clear that the city manager had the power to reject the two names on the list for 'good reason.' When that exhausted the list the power to make a temporary appointment must exist. Here it is provided by rule. That rule is not in contravention of the [enabling statute], but is supplementary thereto, *and would be implied even if not expressed.*" (*Id.*, at pp. 531-532, italics added.)

In *Thomlinson* v. *City etc. of San Francisco* (1964) 227 Cal.App.2d 619 [38 Cal.Rptr. 863], a San Francisco City Charter provided that the civil service commission determine prevailing wages and certify them to the board of supervisors which then paid the same rate to its similarly situated employees. The commission was to check collective bargaining agreements on April 1 of each year and certify the wages for the fiscal year commencing July 1. It was also to review all such agreements shortly after July 1 of each year and certify any modifications.

The commission certified the wrong rate by making the mistake of applying the collective bargaining agreement covering San Mateo County rather

than San Francisco. Thereafter, when it learned its error it certified the lower San Francisco rate at the time specified in July. It was uncontradicted that the lower rate was not due to a change in the collective bargaining agreement but by finding the true rate applicable to San Francisco.

The employees filed a petition for writ of mandate, the trial court denied the writ and the appellate panel affirmed.

Although the commission had no express power to make the correction, it had the implied power to do so. "We think that this express authority to review the agreement included and necessarily implied the power of the commission during such review to correct its previous error as a means of accomplishing the purpose of the charter provision and of efficiently carrying out the commission's reviewing functions thereunder." (*Id.*, at p. 625.)

Defendants have cited a case from without this state which is directly on point. In *People* v. *Sheehan* (1959) 24 Ill.App.2d 43 [163 N.E.2d 834], plaintiffs were police lieutenants in the City of Chicago who took a 1954 examination. Because the grading of the examinations was deemed unfair by the civil service commission, it refused to publish the list. Instead, it conducted another examination in 1958. This action was to prohibit the publication of the results of the 1958 test. Although the commission had the power to strike names of candidates off a register after they had remained there for two years, it was not given an express power to decline to publish the list at all because of irregularities in the grading of the examination. The defendant civil service commissioners moved for a judgment on the pleadings, which was granted. In affirming, the appellate panel quoted with approval *People* ex rel. *Heineck* v. *Holding* (1917) 207 Ill.App. 38, 41-42: " 'The power of the commissioners must, of course, be determined by the terms of the statute, and we find that while commissioners are authorized to appoint examiners, the statute expressly directs that the commissioners shall control all the examinations, and later provides that they shall investigate the action of the examiners. The purpose of these provisions is clear. The provisions of the statute were intended to create conditions under which appointment to positions in the county service should be on the basis of merit. To this end a commission is created, charged with the duty of faithfully carrying out the provisions of the statute . . . . To say that it has these powers and duties and no power to set aside an examination, which in its opinion had been *irregularly* or *improperly* conducted, would be a distinct contradiction in terms . . . . We are of the opinion that it necessarily follows that when an investigation of the action of the examiners discloses facts which, in the opinion of the commissioners, convince them that an examination has been *unfairly* or *improperly* conducted, it is not only within their

power, but it is their duty, under the statute, to set that examination aside.' " (*People* v. *Sheehan, supra,* 163 N.E.2d at p. 837.)

We note that none of the above cases used the term "indispensable" in discussing the implied powers granted to the involved agencies. *Baker, Higgins* and *Thomlinson* approved the utilization of broad implied powers by civil service commissions in administering an employment system. Thus, the holding of these cases appears to temper the "indispensable" language of *Addison* in the present context.

■ The ground relied upon by the trial court to grant the petition—that the commission did not comply with its own rules—is tangential to the determinative issue of this case. If the commission had the implied power to invalidate for cause an eligible list tainted by cheating, it was not required to follow its own rules for removal for cause of *individuals* from a list. If no such implied power existed, the commission was acting in excess of its authority, and the act was void. (*Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103-104 [77 Cal.Rptr. 224, 453 P.2d 728].) In either situation it is immaterial whether the commission adhered to other of its rules which were inapplicable to the problem confronting it.

■ The final argument that might be made in support of the contention that the commission's action was outside its legitimate powers is that the enabling statute—ordinance No. A-126—requires that an eligible list "shall remain in force for not less than six (6) months . . . ." (Ordinance No. A-126, § VII, subd. (h).) However, it is consonant with the purposes and objects of the merit civil service system to interpret the durational aspect of that provision as applying only to valid lists, i.e., absent any express or implied basis for terminating an eligible list, that list must remain in effect for six months. The minimum six-month period appears to have been designed to give a valid list of eligibles a reasonable opportunity to obtain an appointment (just as the two-year maximum insures that an eligible list does not "go stale" by no longer reflecting the current qualifications of the listees) by providing that their list is not abolished before any vacancies can be filled. It does not contradict this purpose to permit the commission to immediately abolish a list which for good cause should not be used as a basis for any appointments.

■ For the above reasons, the commission was acting within the proper scope of its implied powers when it invalidated the challenged list because the written examination had been compromised by cheating.

III. Were Plaintiffs Deprived of Due Process of Law?*

. . . . . . . . . . . . . . . . . . . . . . . .

## V. Conclusion

The judgment is reversed. The trial court is directed to vacate its previous order and to enter a new order denying the petition for writ of mandate.

Franson, Acting P. J., and Zenovich, J., concurred.

---

*See footnote, *ante,* page 867.