People of State of Illinois ex rel. Daniel A. Gilbert, Appellee, v. Stephen E. Hurley, John W. Clarke and Albert H. Williams, Civil Service Commissioners of the City of Chicago, and John C. Prendergast, Commissioner of Police of Chicago, Appellants.

Gen. No. 44,541.

Opinion filed December 30, 1948. Released for publication January 18, 1949.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division and SYDNEY R. DREBIN, Assistant Corporation Counsel, of counsel.

MICHAEL F. RYAN, of Chicago, for appellee; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

The plaintiff, Daniel A. Gilbert, filed a complaint for a writ of mandamus praying that the court compel the Civil Service Commission of the City of Chicago to expunge from its records and hold for naught all official documents showing the date of his birth as being August 31, 1885; that it take all necessary steps to correct its records to show the date of his birth to be August 31, 1889, and so certify to the commissioner of police; and that the commissioner of police recognize such certification so that plaintiff may continue to perform the duties and receive the salary of captain of police on and after August 31, 1948 and until August 31, 1952, if he then be in the classified service, or until he be removed or discharged as provided by law. Trial by the court upon plaintiff's complaint, the answer of defendants, plaintiff's reply and evidence adduced upon the hearing, resulted in the entry of a judgment ordering the writ to issue as prayed, from which defendants appeal.

It appears from the pleadings that on December 21, 1914, plaintiff filed his application to take the original entrance examination for patrolman in the classified civil service of the City of Chicago. Thereafter, on April 6, 1917, he was appointed patrolman and promoted successively to the ranks of sergeant of police on May 6, 1922, lieutenant of police on August 2, 1924, and captain of police on January 25, 1926. For more than 15 years last past he has been assigned to the state's attorney's office by the Commissioner of Police, and has served as chief investigator for said office. During his service in the police department he has received nine creditable mentions. Plaintiff alleged in his petition and now contends that the application filed by him for the original entrance examination for patrolman on December 21, 1914, being application No. 1585-E, stated his date of birth as August 31, 1889,

which, if true, would not make him subject to compulsory retirement until August 31, 1952.

Prior to filing his application on December 21, 1914, for the examination for patrolman, plaintiff had, on March 19, 1912, filed an application for the examination for position of police driver, in which he gave the date of his birth as August 31, 1885. Having successfully passed that examination, he was certified and appointed a police driver on September 29, 1913, and after having served less than two months in that position, he voluntarily resigned on November 18, 1913. Some time prior to December 1935, both of these original applications were lost or mislaid, and are not available.

An amendment to section 12 of the Civil Service Act which became effective July 12, 1935 (Ill. Rev. Stat. 1947, ch. 24 ½, par. 51 [Jones Ill. Stats. Ann. 23.052]) provides that "whenever the city council of any city . . . shall designate by ordinance . . . any specific age of not less than sixty-three (63) years as the maximum age for legal employment of policemen or firemen in the service of any city which has adopted or shall adopt this Act or shall designate any minimum age for the automatic or compulsory retirement of policemen or firemen in the service of such city any such policeman or fireman to whom such ordinance or law may refer or apply upon attaining said designated age of sixty-three (63) years or upwards as set out in said ordinance or law shall forthwith and immediately be retired from the service of such city in accordance with the terms or provisions of such ordinance or law," and "that in the case of any such policeman or fireman who shall have filed an application for appointment in the classified civil service of such city the age stated in *such* application shall be conclusive evidence against such policeman or fireman of the age of such policeman or fireman . . . ." (Italics ours.)

Pursuant to the provisions of the foregoing statute the City Council of the City of Chicago passed the following ordinance on February 24, 1937 (Revised Chicago Code 1931, as amended, sec. 675-A): "The age of sixty-three (63) years shall be the maximum age for legal employment of policemen and firemen in the classified civil service of the City of Chicago. Every policeman and every fireman in the classified civil service of the City of Chicago who has attained or shall hereafter attain the age of sixty-three '(63) years shall forthwith and immediately be retired from service."

Under section 7 of rule VI of the Rules of the Civil Service Commission, in force and effect since 1935, "when any such policeman or fireman in the classified civil service has filed an application for appointment in the classified civil service of the City of Chicago the age stated in *such* application shall be conclusive evidence of the age of such policeman or fireman." (Italics ours.) Pursuant to the amendment to section 12, the Commission made an examination of all applications to clarify and correct its records as to the ages of the members of the police and fire departments for the purpose of compulsory retirement in the future, and it is alleged in plaintiff's complaint "that inadvertently or otherwise the records of the Commission pertaining to the age of the plaintiff were in dispute because (a) the previous application for police driver, from which position he resigned, bore the date of birth August 31, 1885, and (b) his application for entrance examination as a patrolman shows the date of his birth as August 31, 1889; that the latter only can and should fix the age for compulsory retirement of the plaintiff."

It appears that on August 27, 1945, an official communication from James M. McSweeney, secretary of the Chicago police department, to the commissioner of police, in reply to an inquiry made by the Chicago Civil Service Commission at that time, included the name of the plaintiff, Captain Daniel A. Gilbert, among

others, and certified that the records of the department of police showed that Gilbert's birth date was August 31, 1889, and that "no subsequent changes were made."

It further appears that under the provisions of An Act to provide for the creation, setting apart, maintenance and administration of a policemen's annuity and benefit fund, approved June 29, 1921 (Ill. Rev. Stat. 1947, ch. 24, par. 954 [Jones Ill. Stats. Ann. 100.134]), there was imposed on the proper officers of the city the duty to "(c) Procure for and transmit to the retirement board, in such form and at such time or times as shall be specified by said retirement board, all information requested by said retirement board concerning the service, age, salary, residence, marital condition, wife or widow, children, physical condition, mental condition, and death of any policemen employed by such city, in particular, information concerning service rendered by any such policeman prior to the first day in the month of January of the first year after the year in which this Act shall come in force and effect in such city. (d) Convey to the retirement board all information required by said retirement board concerning each newly appointed policeman immediately after the appointment of such policeman. (e) Certify to the retirement board, as of some day in each year to be fixed by said retirement board, the name of each policeman to whom this Act applies." In compliance with this statute, the police department certified all information pertaining to plaintiff, including the date of his birth, and it is alleged in the complaint that this information was taken from application No. 1585–E filed with the Civil Service Commission, and that the records of the police department furnished to the retirement board of the policemen's benefit fund "show that the plaintiff Captain Daniel A. Gilbert was then a police patrolman in the 27th precinct and gave the date of his birth as August 31, 1889."

· The complaint alleges, and it is not denied, that shortly prior to December 24, 1947, the Civil Service Commission, through its secretary, notified plaintiff that there was to be a hearing to ascertain his correct age for the purpose of determining whether he should be included among those to be retired in 1948. That hearing was held January 9, 1948. Two days before the hearing a written stipulation was entered into between counsel for the respective parties that certain attached photostatic copies of the official records of the police department and of the police pension board showing the date of plaintiff's birth "shall be introduced and filed with the Chicago Civil Service Commission in the matter of the hearing by the Chicago Civil Service Commission pertaining to the *age stated in application* and *correct age* of DANIEL A. GILBERT as a member of the Department of Police of the City of Chicago, for the purpose of determination by the Civil Service Commission of *the correct age* and *age stated in application* of DANIEL A. GILBERT when he became a patrolman in the Department of Police of the City of Chicago." (Italics ours.) The information from both the police department and the police pension board certifying to the correct date of plaintiff's birth (August 31, 1889) had been previously furnished the Civil Service Commission in 1945 at its own request made at that time.

Pursuant to the hearing, the Civil Service Commission, on January 29, 1948, made its "Report of Investigation in the Matter of the Retirement of Daniel A. Gilbert," and on the same date adopted a motion approving and confirming the report and fixing the date that the retirement of plaintiff should become effective as August 31, 1948. The report of the commission refers to the two separate applications for original entrance examinations filed by plaintiff for police driver and police patrolman, states that members of the commission staff testified at the public hear-

ing as to certain of its records and as to its procedure and practices with respect thereto, that no testimony was offered in plaintiff's behalf, "but a variety of persuasive documentary evidence was admitted by stipulation with, or at the instance of, his counsel, which indicates that he was born on August 31, 1889 and is now 58 years of age," that "it has no choice but to apply the plain language of Section 12 of the Act in ascertaining Captain Gilbert's retirement age," which provides that the age stated in the application for the appointment shall be conclusive evidence against a policeman for the purposes of retirement, and that "if so, the matter for determination is not his actual age, but rather the age which he has stated in an application for appointment in the classified civil service of the City of Chicago, and since each of the two applications filed by him for such an appointment is missing, the Commission must resort to its official records for evidence of his age as so stated by him therein."

For the purpose of ascertaining the age stated in Gilbert's missing application, the commission relied on so-called "history cards" contained in its "record system" and maintained under commission regulation VIII, which provides that "history cards should be made upon approved applications," containing "applicant's name, address, date of birth, title of examination, examination number, application number, and date of filing," and it found that "two of such history cards in the official records of the Commission pertain to Captain Gilbert, one relating to his former position of Police Driver and the other to his position as Patrolman and later positions held by him in the Chicago Police Department, and on each of these cards the date of his birth is stated to be August 31, 1885. Accordingly, it follows from such history card records, which as official records import verity and should be relied upon by the Commission, that in each of the applications in question Captain Gilbert stated the date of his

birth to be August 31, 1885.'' The Commission concluded that plaintiff should, for the purposes of its action as to his prospective retirement from the classified civil service pursuant to section 12, be deemed to have reached the age of 63 on August 31, 1948.

In arriving at its conclusion the commission conceded, in effect, that the true date of Gilbert's birth was August 31, 1889, because it recites that ''a variety of persuasive documentary evidence was admitted by stipulation with, or at the instance of, his counsel, which indicates that he was born on August 31, 1889 and is now 58 years of age''; but it decided that the matter for determination was not his actual age but the age which he had stated in his application for appointment as patrolman, and relying on the contents of the history cards which it found to ''import verity and [which] should be relied upon by the Commission,'' it excluded all other evidence, including the photostatic copies of the official records of the police department and of the police pension board, which it had agreed by stipulation to introduce ''for the purpose of determination . . . of the correct age and age stated in application of DANIEL A. GILBERT when he became a patrolman in the Department of Police . . . .''

After the filing of the report on January 29, 1948, and the adoption, concurrently, of a motion approving and confirming it, fixing the date of Gilbert's retirement effective as of August 31, 1948, Gilbert filed his petition for mandamus on March 19, 1948. On the trial of this proceeding plaintiff testified that he was born in Chicago on August 31, 1889. On cross-examination he stated that he had filed several applications for civil service positions in which he overstated his age because he was not then eligible under the age limit for the positions that he sought, but that in his application for examination for patrolman in the police department he gave August 31, 1889 as his date of birth; and he introduced in evidence his baptismal

certificate, showing that according to the baptismal register of St. Patrick's church in Chicago, he was born on the 31st of August, 1889, as well as six original insurance policies, admitted by stipulation, issued by John Hancock Mutual Insurance Company, dated March 10, 1920; Mutual Life Insurance Company, dated September 12, 1928; New York Life Insurance Company, dated June 3, 1930; Equitable Life Assurance Society, one dated September 12, 1936 and a second dated September 22, 1939; and Penn Mutual Life Insurance Company, dated October 17, 1942; in each of these policies the date of his birth was given as the year 1889.

The law is well settled in this State that the Civil Service Commission exercises purely statutory powers, and must find in the statute its warrant for the exercise of any authority it claims. *Funkhouser v. Coffin,* 301 Ill. 257. Plaintiff contends that the commission had no authority under section 12 of the statute to conduct a hearing or investigation to determine his age for compulsory retirement purposes. As already stated, it appears that the State legislature amended section 12 authorizing cities operating under the act to pass an ordinance designating any specific age of not less than 63 years as the maximum age for legal employment of policemen or firemen for service in the city; that any such policeman or fireman to whom such ordinance may apply, upon attaining the age provided in the ordinance, should forthwith be retired from the service of such city; that in the case of any such policeman or fireman who shall have filed an application for appointment in the classified service, the age stated in such application shall be conclusive evidence against him; that the commission was authorized to hear testimony and consider all evidence available in any case where such policeman or fireman was charged with understating his age in his application. The purpose of the amendment is clear. The statute expresses the

public policy of this State as to the retirement age of a policeman or fireman. It certainly did not contemplate that a policeman or fireman should be compelled to retire before the age (63 years) fixed in the ordinance adopted pursuant to the statute. The purpose and effect of the action of the commission was to compel Gilbert to retire at the age of 59.

As has been seen, the amendment contains a provision that if the commission has reasonable grounds to believe that an applicant's age is understated in his application, it is authorized to prefer charges against him and to hear testimony and consider all available evidence as to the charge, the scope and purpose of such hearing being to ascertain the *correct* age of the applicant. This is the only exception in the statute to the provision therein that when a policeman or fireman has filed an application for appointment in the classified civil service, "the age stated in such application shall be conclusive evidence against such policeman or fireman of the age of such policeman or fireman." But where the application is lost or mislaid, the act does not provide nor, in our opinion, did it contemplate, that the commission could call a hearing or conduct a so-called investigation, at which other records would be substituted in place of the application and considered as conclusive as the application itself. The power given by the State legislature to the Commission to order the compulsory retirement of a policeman 63 years of age or upwards, must be predicated on section 12 of the statute and the ordinance adopted pursuant thereto. Nowhere in the statute is the Civil Service Commission given any discretion to fix the age of retirement; nor is the commission given the right to hold a hearing with reference to the age of a policeman for retirement purposes, except where charges have been made that he understated his age.

In *Malloy v. City of Chicago,* 365 Ill. 604, the court held that "it is only when charges have been

brought against such policeman or fireman that he has understated his age, that the commission may hear any evidence at all. That is the only hearing provided for in this connection." In *People ex rel. Goudie v. Allman,* 334 Ill. App. 52, the Appellate Court followed the same line of reasoning. From these considerations it seems clear that the Civil Service Commission, as an administrative agency, is limited to the exercise of purely statutory powers, and must find in the statute the warrant for the exercise of any authority it claims. The hearing of the commission was conducted solely for the purpose of fixing his age for compulsory retirement purposes, and we find no express warrant in either the statute or the ordinance for such a hearing. Defendants, evidently entertaining some doubt themselves as to their authority to conduct such a hearing, now, for the first time, contend on appeal that the hearing was held under section 14 (par. 53) of the Civil Service Act. Nowhere in the record presented, in the answer of defendants, in their amended answer, in the testimony adduced upon the hearing, nor in the discussions with the court, was there any mention or claim made that the hearing had been conducted under section 14. That section merely gives the commission general power to investigate the enforcement of the Act and the conduct of appointees in the classified service. It provides that the commission "may enquire as to the nature, tenure and compensation of all offices and places in the public service thereof." Nowhere in this section is the commission given power to hear or determine charges, nor is it authorized to remove, discharge, retire or suspend a civil service employee; such powers are to be found only in section 12. Defining the powers of the State Civil Service Commission under like provisions, the court in *People v. Stevenson,* 270 Ill. 569, said that "Section 14 makes it the duty of the commission to investigate the *efficiency* of all officers and employees and

of all groups of officers and employees in the classified service, and to report to each officer, board or other authority in charge of any institution, office or department of the State government its findings and recommendations relative to increasing efficiency and economy therein." (Italics ours.) Continuing, the court observed: "These provisions, however, confer no authority to require an examination of any officer or employee in the classified service." It is thus apparent that section 14 of the Civil Service Act, under which defendants now claim to have proceeded in their investigation, does not authorize or empower the commission to hold a hearing for the removal or retirement of an employee.

The Act is silent as to the procedure to be followed when an application has been lost or misplaced, and counsel say that there are no reported cases on the subject. It may well be that in the absence of any express statutory provisions, the commission would have implied power to ascertain the date stated by Gilbert in his missing application for patrolman. However, any such hearing would have to adhere reasonably to the procedure ordinarily followed in controverted matters. The commission could not arbitrarily limit the scope of the hearing, as it did in this investigation. Under section 12, where charges are made against an applicant for *understating* his age, the commission is authorized to "hear testimony and consider all evidence available." We perceive no reason why the commission should not be required to follow the same procedure in a hearing or investigation conducted by it to ascertain the date on an application, where it is claimed by the commission, in effect, that the applicant has *overstated* his age. If it proceeded under some authority implied from section 12 of the statute, the course of procedure required of it should certainly be implied from the same section.

The commission in its report stated that "this hearing, although not required by law, was had to . . . afford Captain Gilbert a full opportunity to present information relevant" to his age for retirement. Significantly, it broadened the scope of the hearing by stipulating in advance that there should be introduced and filed with the commission "photostatic copies of records of the Department of Police . . . and . . . of the Retirement Board of the Policemen's Annuity and Benefit Fund . . . pertaining to the age stated in application and *correct* age of DANIEL A. GILBERT as a member of the Department of Police." (Italics ours.) Moreover, the commission had asked these two departments to certify their records to it, and had them available at the hearing. It was evidently convinced from "a variety of persuasive documentary evidence" that he was born August 31, 1889, and was at the time of the hearing 58 years of age rather than 62. Having invited him to participate in the hearing, stipulated with him to receive documentary evidence pertaining not only to the age stated in his application but also his correct age, and received convincing evidence from which it found his correct age to be 58 years, it was an arbitrary exercise of power to disregard all of the evidence favorable to Gilbert, and hold that only the Civil Service Commission history cards "import verity and should be relied upon by the Commission."

In the light of these conclusions it becomes important to consider these history cards and the evidence adduced in the mandamus hearing pertaining thereto. They were received in evidence as defendants' exhibits 1 and 2 and relate to Gilbert's positions as police driver and police patrolman, respectively. Defendants contend that these cards were kept pursuant to regulation VIII of the commission which reads in part as follows: "1. Records of eligibles from the filing of application

to termination of service shall be kept by a card system, based upon permanent book records, according to the following methods: (a) All classes, except L (Labor service) — History cards shall be made upon approved applications. They shall contain applicant's name, address, date of birth, title of examination, examination number, application number and date of filing, and shall be classified by names of positions applied for pending result of examinations.''

James S. Osborne, secretary of the Civil Service Commission, called on behalf of defendants, testified that ''at the time we post an eligible list, it goes to a clerk who makes out this history card with the date of birth, date of examination, and then it moves from there into the record division and a complete record of everything that transpired relating to the man's card showing his name and address etc. and his promotions. The information is secured from the eligible list. The first thing we do is make a history card. . . . That application gets the same number which was the application number. *The list itself does not have the date of birth.* It has, however, reference to an application so the person who makes out this card *supposedly* looks at the application. The Assistant Secretary is the one who directs the making of the card. The clerk who made Gilbert's card is Cora Hutchinson. She is dead.'' (Italics ours.) Osborne did not testify that there were no other sources available aside from the application from which the data for the history card could be taken. Since regulation VIII provides that history cards shall be made upon approved applications, it is apparent from Osborne's testimony that the commission's own regulation regarding the maintenance of history cards was not followed. According to his testimony, these history cards were not made up from applications but from the eligible list, and accordingly it would have been possible for a clerk to refer to information other than the original

application to obtain the data set forth on the history card. Moreover, it appears that Osborne entered the employ of the Civil Service Commission in 1928, approximately 14 years after these history cards were prepared. Obviously the history cards were not made under Osborne's direction, and he could not state from what source the clerk or clerks who prepared them, secured their information.

As against this evidence the commission and the court had before them the testimony of James E. McSweeney, secretary of the Chicago Police Department, and Patrick E. Dwyer, executive secretary of the Policemen's Annuity Pension Fund Board, both of whom were called as witnesses for defendants. They brought with them records of their respective departments, which were introduced in evidence, showing Gilbert's date of birth as August 31, 1889. The history card of the Policemen's Annuity and Benefit Fund (which is not to be confused with the history cards of the Civil Service Commission), produced by Dwyer and introduced in evidence as plaintiff's exhibits 1 and 2, gives the date of Gilbert's birth as August 31, 1889. It is evident that the police department and the policemen's annuity fund since 1917 have been proceeding on the theory that Gilbert will not be 63 years of age until 1952, because their records indicate the date of his birth to have been August 31, 1889, and it seems to us that their history cards and records imported at least as much verity as to the date given on Gilbert's missing application for patrolman as the records of the Civil Service Commission.

Section 12 of the Act makes the age stated in the application conclusive evidence against the applicant as to his age; but in the absence of the application, as in the case at bar, there is certainly nothing conclusive, by statute or otherwise, in other records of the commission, especially in view of the uncertainty as to the source from which the date of Gilbert's birth

in such other records may have been derived. It has been held that section 12 "was clearly intended to provide that when an applicant for the position of policeman or fireman states his age under oath, as he is required to do, he will not be permitted to later say such statement is not true." *Malloy v. City of Chicago, supra.* But where the application is missing, proof of the applicant's age, as stated in his application, would necessarily have to be made by secondary evidence, and in that situation any competent evidence ought to be admitted. The commission, in holding that its official records "import verity," considered both of the applications filed by Gilbert, one for the examination for police driver in 1912 and the other for patrolman in 1914. Plaintiff admits that when he applied for the position of police driver in 1912 he stated the date of his birth as August 31, 1885, and he explained this misstatement by saying that he was not then eligible for the position that he sought and overstated his age because he wished to be placed on the civil service list. However, when he made his application in 1914, he had attained the age required to take the examination for patrolman, and consequently there was no reason or incentive for him at that time to misstate his age. In this proceeding he testified that the date of birth stated in his application for patrolman was August 31, 1889, and it would therefore seem to us that any evidentiary facts tending to corroborate his testimony would be competent to show the true date of his birth as stated in his application.

For the reasons indicated we are of the opinion that the trial judge properly ordered the issuance of the writ of mandamus as prayed. The propriety of such remedy was never challenged in the trial of the cause. The judgment of the circuit court is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.