JAMES McARDLE, Plaintiff-Appellee, v. MATTHEW RODRIGUEZ, Superintendent of the Chicago Police Department, *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—95—1075

Opinion filed December 22, 1995.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellants.

Dale D. Pierson, of Baum, Sigman, Auerback, Pierson & Neuman, Ltd., and Thomas J. Pleines, of Fraternal Order of Police, both of Chicago, and Edward M. Maloney, of Ahern & Maloney, of Skokie, for appellee.

JUSTICE EGAN delivered the opinion of the court:

On April 29, 1994, the City of Chicago Department of Personnel announced an examination for promotions to the position of police lieutenant in the Chicago police department. By March 1995, the city had the results from the examination. The defendants promoted 54 sergeants to lieutenant based on the fact they had achieved the highest scores on the examination. The defendants promoted 13 additional sergeants based on recommendations by the police department's Academic Selection Board (ASB).

On March 20, 1995, the plaintiff, Sergeant James McArdle, filed a complaint against the defendants for a permanent injunction and declaratory relief. He had achieved the 56th highest score on the lieutenants examination, and the defendants did not promote him. The plaintiff asked the judge to enjoin the defendants from "promot-

ing to the rank of Lieutenant any Sergeant out of rank order, and/or any Sergeant based upon 'merit,' or any factor other than the results of competitive testing" and to declare that the City of Chicago Personnel Rules (Personnel Rules) provide the sole method for promotions. The plaintiff also requested a temporary restraining order, which the judge granted on March 21, 1995.

On March 24, 1995, the plaintiff filed a motion for a preliminary injunction against the defendants: Matthew Rodriguez, superintendent of the Chicago police department; the City of Chicago (the City); and Mayor Richard M. Daley. The plaintiff asked for the same injunctive and declaratory relief as in his complaint for a permanent injunction.

On March 29, 1995, the judge issued an order granting the preliminary injunction. He enjoined the defendants from "promoting or allowing the promotion of the 13 so-called merit selection candidates for the rank of Lieutenant in the Chicago Police Department." He also required the defendants to remove those candidates from the lieutenants training program. The judge denied the defendants' emergency motion to stay the injunction, but, on April 3, 1995, we granted the defendants' emergency motion to stay the portion of the judge's order that required the defendants to remove the 13 sergeants from the lieutenants training program. The defendants raise several arguments against the granting of the preliminary injunction.

At the hearing on the preliminary injunction, the plaintiff testified and called Department of Personnel Commissioner Glenn Carr as an adverse witness. Superintendent Rodriguez, Joe DeLopez, the commander of the police department's Training Academy and the clerk of the ASB and Robert Joyce, the deputy commissioner of the Department of Personnel, testified on behalf of the defendants.

The plaintiff testified that he learned of the lieutenants examination through the April announcement, which the Department of Personnel had issued. The announcement provided that "[t]he promotional process [would] include three components. Each of the three components [would] contribute *EQUALLY* to the final score." (Emphasis in original.) The three components the announcement described were an oral briefing exercise, an in-basket simulation and a written multiple-choice test. Each of the three components would have equal weight in the scoring process: "A TOTAL SCORE will be determined by adding together equally weighted scores on *all three components*." (Emphasis in original.)

According to the plaintiff, he and the other sergeants who planned to take the lieutenants examination believed that the City would base its promotions on only the three test components. After

receiving his results from the examination in the mail, he learned that 55 sergeants had achieved higher scores on the examination. He believed, therefore, that his score qualified him to be among the 67 sergeants the City promoted to lieutenant.

The City officials who testified explained the circumstances surrounding their decision to make merit promotions. The lieutenants examination that the Department of Personnel announced in 1994 was prepared by an outside consultant, Barrett and Associates. The Department of Personnel was not involved in grading the examination, and an independent accounting firm provided the scores. The City obtained these scores sometime before March 8 or 10, 1995.

On March 8, 1995, Superintendent Rodriguez sent a letter to the police department chiefs, deputy chiefs and assistant deputy superintendents. He asked them to nominate sergeants for merit promotions:

> "The Department is presently pursuing the opportunity of merit selection appointments to the rank of Lieutenant of Police. I presently anticipate making these merit appointments outside the vacancies clearly anticipated for the life of the new Lieutenant's list (3 years). This will be accomplished through reorganization and reassignment of command officer functions."

Rodriguez requested the recipients of this letter to submit nominations for merit appointments to the ASB by March 13, 1995. He specified certain nomination criteria, such as leadership skills, education, awards and performance. A sergeant's score on the lieutenants examination was not among these criteria.

On March 13, 1995, Rodriguez sent a letter to Carr, in which he inquired about his authority to initiate "merit promotions." Rodriguez informed Carr that he wanted to make merit promotions in conjunction with promotions based on scores from the lieutenants examination. The merit promotions he planned would constitute 20% of the total number of sergeants promoted.

Rodriguez explained to Carr that he based his request for authority to make merit promotions in part on a recommendation the Blue Ribbon Panel on Police Testing, Hiring and Promotion (Panel) had made to Mayor Daley on February 28, 1995, at his request. The Panel had recommended that the City give significant consideration to an officer's performance in making promotions to lieutenant and that the City give the superintendent "significant discretion to make promotional selections" because the future leadership of the department would be drawn from those promoted to lieutenant. The Panel suggested that the City apply its practice of basing 20% of detective promotions on merit to lieutenant promotions. (The Panel also "real-

ize[d] that some of these proposals may not yet be practical.") Although he testified that he could not make promotions without Carr's approval, Rodriguez did not discuss his authority to make merit promotions with Carr before March 13, 1995.

On March 15, 1995, Carr responded to Rodriguez's request for authority to make merit promotions. Carr stated in a letter that, after reviewing the scores from the examination, he had determined that promotions based on these scores would have a severe adverse impact on black and Hispanic candidates. Consequently, the Department of Personnel had an obligation to use an alternative selection procedure. He, therefore, approved of Rodriguez's merit promotion plan:

> "I understand that you have directed exempt rank personnel to identify outstanding candidates for selection to the rank of police lieutenant, based on their performance as sergeants. These nominations are limited to career service sergeants who applied pursuant to the announcement for examination No. 39400. The resulting names will be submitted to your Department's Academic Selection Board, which will rate such persons as 'recommended' or 'highly recommended,' based on the Board's judgment of each applicant's respective qualifications.
>
> I hereby approve the foregoing and approve this performance component as part of examination [N]o. 39400. These ratings should be transmitted to Robert Joyce, Deputy Commissioner of Personnel, for use in screening from the police lieutenant categorical promotional list. At that point, you should designate one or more members of the Chicago police department to assist the Department of Personnel in screening names from the promotional list for the referral list. I understand that the two screening criteria will be the combined score on the oral briefing exercise, in-basket simulation and written components and the ratings given by the Academic Selection Board."

Carr wrote Rodriguez that it was within his authority as commissioner to impose a performance component as part of the examination process. This authority stemmed from section 2—74—050(6) of the Chicago Municipal Code (Chicago Municipal Code § 2—74—050(6) (1995)) (Code), under which the commissioner is responsible for issuing personnel rules that "give appropriate considerations to the applicant's qualifications, record of performance and ability."

Carr believed that the examination announcement also supported his authority to approve merit promotions because it informed candidates for promotion that the City might consider performance in addition to examination scores in making promotions: "THE DEPARTMENT OF PERSONNEL RESERVES THE RIGHT IN ANY

SECTION OF THE ABOVE EXAMINATION TO IMPOSE WRIT-
TEN, ORAL, AND PERFORMANCE TESTS AND TESTS OF PHYS-
ICAL QUALIFICATIONS AND HEALTH."

Carr and Joyce testified that the words "performance tests" in the announcement meant past work experience and performance. Joyce, who drafted the lieutenants examination announcement, testified that, by the words "performance tests," he

> "meant it in its most broad interpretation. [He] intended that to be a statement that told the test takers that [the Department of Personnel] would, [the Department of Personnel] could possibly include other parts of the examination and that gave [the Department] the authority to do so because [it] informed them of that."

Carr and Joyce agreed that past performance would not have been measured by the three Barrett components of the examination.

According to Carr and Joyce, the Personnel Rules did not require them to give sergeants taking the lieutenants examination advance notice of the additional performance component to the examination. The Personnel Rules also did not require them to provide advance notice of the weight of the examination components. In fact, Joyce testified that, in the past, the weight of components had been determined after examinations had been administered. When the plaintiff's counsel asked Carr whether he had the authority to add a performance component to the examination process after the examination had been scored, the commissioner stated that he had the discretion to completely discard the examination scores, if he thought that was warranted. Before he received Rodriguez's letter of March 13, he was considering discarding these scores entirely. Joyce testified that, in the past, the City had based determinations of eligibility for promotions on performance. This, however, had been in the context of promotions to detective. Unlike lieutenants, detectives were not members of the career service, and merit promotions for detectives were specifically authorized by a police department general order and the detectives' collective bargaining agreement between the City and the police union.

Commander Joe DeLopez explained the role of the ASB in the merit promotion process. The ASB consisted of each deputy superintendent and the commander of the Training Academy. In the past, it had normally reviewed applications for academic opportunities and other assignments. After receiving 52 nominees for merit promotions, the ASB reviewed the nominees' qualifications, medical backgrounds, assignments, disciplinary records and academic histories. Based on this information and the criteria in Rodriguez's March 8 letter, the Board rated each nominee highly recommended, recommended or not recommended.

Deputy Commissioner Joyce explained the promotional procedures under the Personnel Rules. After the Department of Personnel conducts an examination, it creates a list of candidates who are eligible for promotion. When the Department of Personnel seeks to fill vacancies, it creates a referral list of candidates from the eligible list. The referral list is a list of those candidates that the Department of Personnel certifies are eligible for promotion. The superintendent makes appointments from the referral list.

In this case, Joyce and an unidentified representative from the police department, whom the superintendent nominated, created the referral list based on two criteria. Those two criteria were the "score on the written portions of the examination and/or the recommendations from the Academic Selection Board." (Emphasis added.)

Carr testified that he did not intend the merit selection process to be separate from the examination results but to be used in conjunction with these results. He admitted, however, that there were some sergeants who had received merit promotions but had not taken the lieutenants examination.

Rodriguez's testimony indicated that he believed sergeants could be eligible for promotion *either* through their examination scores *or* through recommendations by the ASB. He explained that, although two sergeants who received merit promotions did not take the lieutenants examination, they were eligible for promotion based on the ratings they received from the ASB. We note that, by acquiescing in promotions of persons who had not even taken the examination, Carr ignored his own March 15, 1995, letter to Rodriguez in which he said that the additional promotions were "limited to career service sergeants who applied pursuant to the announcement for examination No. 39400."

Like Rodriguez, Joyce testified that sergeants could be eligible for promotion based only on the recommendation of the ASB, even if they had not taken the lieutenants examination. He claimed that he knew that it was Carr's intent to allow promotions based only on the recommendations of the ASB because he was the one who had recommended to Carr that he allow such promotions.

The referral list Joyce provided the superintendent for the lieutenant promotions contained 100 names. The superintendent had advised Joyce that he intended to make 67 promotions, and, according to Joyce, the superintendent had absolute discretion to choose any of the 100 sergeants on the list for the 67 promotions.

Rodriguez explained his decision to promote 54 sergeants based on their examination scores and to promote 13 sergeants based on merit. There were 52 openings for lieutenants within the 1995 budget,

and the scores of the sergeants who received the 51st to 54th highest scores on the lieutenants examination were tied. Consequently, Rodriguez decided to promote the 54 sergeants with the highest scores. He decided to promote an additional 13 sergeants on the basis of recommendations from the ASB, and he restructured the police department in order to create these additional 13 lieutenant positions.

Rodriguez further testified that he had no intention to promote more than 54 sergeants before deciding to make merit promotions and that the plaintiff would not have been one of these 54. At the time he reorganized the police department to create the 13 additional positions, Rodriguez expected to fill 173 lieutenant positions within the following three years. He hoped to make additional promotions before the end of the year, but he was not sure that he would make any promotions by this time, and, if he did, he was not sure how many promotions he would make. He planned to base 20% of any future promotions on merit. Carr did not know if the City would make additional promotions from the lieutenants examination, but he did state that it was probable that the City would continue to use the merit promotion process.

The judge had granted the plaintiff's motion *in limine*, in which the plaintiff had asked the judge to prohibit the defendants from presenting evidence concerning their motivation for making the merit promotions, such as their potential liability under Federal law. When Joyce began to testify about Federal guidelines concerning employment examinations with adverse impacts on minorities, the plaintiff objected, and the judge prohibited further testimony on the subject but allowed the defendants to make an offer of proof. After hearing all the evidence, the judge entered an order preliminarily enjoining the defendants from promoting the 13 additional sergeants.

■ In order for a preliminary injunction to issue, a plaintiff must show that (1) he has a clearly ascertainable right in need of protection, (2) he will suffer irreparable injury without the injunction, (3) he has no adequate legal remedy, and (4) he is likely to succeed on the merits. (*Postma v. Jack Brown Buick, Inc.* (1993), 157 Ill. 2d 391, 626 N.E.2d 199.) The decision whether to grant a preliminary injunction is within the sound discretion of the trial judge, and a reviewing court will not disturb the trial judge's decision unless it is against the manifest weight of the evidence. *In re Marriage of James* (1994), 259 Ill. App. 3d 29, 630 N.E.2d 948.

We will first consider whether the plaintiff has established that he is likely to succeed on the merits. The defendants did introduce some testimony and sought to introduce other testimony to establish

that the promotions based on merit were made because some qualifying candidates may do poorly on written examinations, to assure diversity and fairness in the ranks, to align the results with Federal percentages and to avoid being sued under the Federal civil rights statute. (42 U.S.C.A. § 2000e—2 (West 1994).) (We note that, despite the "merit" promotions, the City was in fact sued in the Federal district court by persons alleging that the examination violated the Federal civil rights statute.) The motives of the defendants are all praiseworthy, but recognition of the worth of the defendants' motives does not answer the ultimate question: What is the source of the defendants' power to promote solely on bases other than examinations? The City offered evidence, and argues now, that the source of its power is the Municipal Code and the rules of the Department of Personnel.

■ In order for the merit promotions to have been proper, they must have been authorized by the Code. An administrative agency has no inherent or common law powers. Its powers are limited to those granted by an express provision of the law it administers or found, by fair implication or intendment from the agency's express authority, to be incident to accomplishing the objectives for which the agency was created. (*Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n* (1987), 165 Ill. App. 3d 235, 520 N.E.2d 46.) This limit on the powers of an administrative agency applies with special force to civil service rules because these are deemed part of the employment contract. *Fahey v. Cook County Police Department Merit Board* (1974), 21 Ill. App. 3d 579, 315 N.E.2d 573.

■ Whether the Code authorized the merit promotions, of course, depends on an interpretation of the Code. The same rules courts apply to construe statutes also apply to the interpretation of municipal ordinances. (*In re Application of the County Collector* (1989), 132 Ill. 2d 64, 547 N.E.2d 107.) This is so because a city's power to enact an ordinance is derived from the legislature, and an ordinance passed within that power has the same force and effect within the city as a State statute. (*Lavine Construction Co. v. Johnson* (1981), 101 Ill. App. 3d 817, 428 N.E.2d 1069.) In construing an ordinance, courts give effect to the intention of the municipality as it is evidenced by the ordinance's terminology, its goals and purposes, the structure of the ordinance, the setting in which the words are used and the common and accepted usage of the words. *Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 569 N.E.2d 1182.

In construing statutes and ordinances, courts consider them as a whole (*People v. Lewis* (1994), 158 Ill. 2d 386, 634 N.E.2d 717) and consider the purposes to be achieved by the law (*City of Evanston v.*

*O'Leary* (1993), 244 Ill. App. 3d 190, 614 N.E.2d 114). Our reading of the Code as a whole indicates that the city council did not intend to grant the commissioner the authority to make the merit promotions. His use of nominations and ASB recommendations to determine the eligibility of sergeants for promotions was contrary to the Code, which contemplates that the commissioner will use examinations to determine eligibility for promotions.

■ Section 2—74—050 of the Code requires the commissioner to issue personnel rules

"(4) [f]or the establishment of *eligible lists for appointment and promotion in career service, upon which lists shall be placed the names of successful candidates in order of their relative excellence in the respective examinations.* The commissioner may substitute rankings such as excellent, well-qualified and qualified for numerical ratings and establish eligible lists accordingly." (Emphasis added.) Chicago Municipal Code § 2—74—050(4) (1995).

■ The Department of Personnel's own interpretation of the Code, as evidenced by the Personnel Rules it promulgated, which, we caution, can provide no power independent of that given by the ordinance, also shows the necessity of using examinations to determine eligibility for promotions. Section 1 of Rule VI, Examinations, provides that *"[e]xaminations shall be designed to furnish eligible lists* as needed for all classes of positions in the Career Service." (Emphasis added.) Similarly, section 1 of Rule VII, Employment Lists and Transfers, provides that "[p]ersons may be certified for appointment to positions from five types of employment lists: *** (d) Promotional lists, which contain the names of *persons who are qualified for a class of positions as a result of promotional examinations."* (Emphasis added.)

In addition, section 1, Rule X, Promotions, explicitly requires the City to use examinations to fill vacancies. It must use either promotional examinations or, if a general employment examination is more appropriate, use general employment examinations:

"*Vacancies will be filled where appropriate through the use of promotional examinations.* In cases where there are insufficient eligible candidates from within the Career Service, or, in the judgment of the Commissioner of Personnel, the job requirements and the interest of the City service are best served by considering applicants from outside the Career Service, the Commissioner of Personnel may authorize the use of a general employment examination. When a general employment examination is authorized, persons from within the Career Service who meet the qualification requirements may participate in the examination, and appropriate consideration may be given in the examination for their manner of performance and service." (Emphasis added.)

The defendants disregarded the lieutenants examination results in determining the eligibility of the 13 sergeants who received merit promotions. The defendants used ASB recommendations rather than examination results to determine their eligibility. As Joyce and Rodriguez explained, a sergeant could be eligible for promotion based on only the recommendation from the ASB. The criteria on which the ASB recommendations were based did not include the sergeant's examination score. In fact, at least 2 of the 13 sergeants who received merit promotions had not even taken the lieutenants examination. Given that the defendants disregarded examination results in determining eligibility for merit promotions, the commissioner exceeded his authority under the Code in authorizing these promotions.

To avoid the problem with the fact that they did not use examination results to determine eligibility for the merit promotions, the defendants argue that the ASB recommendation process was a "performance test," which was part of the lieutenants examination. The defendants claim, and Joyce and Carr testified, that the ASB recommendation process fell within the definition of a promotional examination in section 3 of Personnel Rule VI, which defines a promotional examination as

> "any or all of the following job-related parts as determined by the Commissioner of Personnel:
>
> (a) Evaluation of training and experience
>
> (b) Written, oral, performance, or other tests of fitness
>
> (c) Evaluation of performance and/or promotional potential based on past performance
>
> (d) Seniority in the class or classes from which promotion is sought."

Despite the fact that the ASB recommendation process could theoretically fall within the Personnel Rule definition of a promotional examination, we cannot accept the defendants' argument that it was part of the lieutenants examination. The agency that administers an ordinance may adopt rules interpreting that ordinance (*National Pride of Chicago, Inc. v. City of Chicago* (1990), 206 Ill. App. 3d 1090, 562 N.E.2d 563), and a court must generally defer to an administrative agency's interpretation unless it is clearly erroneous, arbitrary or unreasonable. (*Press v. Code Enforcement Board of Appeals* (1992), 149 Ill. 2d 281, 595 N.E.2d 1068; *Monahan*, 210 Ill. App. 3d at 994.) The Department of Personnel's position that the ASB recommendation process was a promotional examination under the Code is clearly erroneous and unreasonable.

If the ASB recommendation process had been part of the lieuten-

ants examination, the ASB would have evaluated those sergeants who had completed the three announced components of the examination rather than only those sergeants nominated by their supervisors. Moreover, the fact that the ASB recommendation process did not commence until after the City had received the scores for the lieutenants examination also indicates that it was not part of the examination.

The defendants argue further that the Code authorized the merit promotions because they were based on performance and the Code allows the commissioner to issue rules for promotions "which shall give appropriate considerations to the applicant's qualifications, record of performance and ability." (Chicago Municipal Code § 2—74—050(6) (1995); see also Personnel Rule X.) They further assert that nothing in the Code or the Personnel Rules "even hints that the City may not supplement promotions based on test results with promotions based on some other criteria, even after a test has been administered and scored."

Although the Code permits the commissioner to issue rules for promotions that give consideration to a candidate's performance, we do not think this is sufficient authority for the merit promotions. To the contrary, we cannot believe that the drafters of the Code intended to permit the commissioner to develop and apply promotional rules in the arbitrary and disparate manner he did in making the merit promotions. To interpret the Code in the manner the defendants propose would lead to an unfair, unreasonable and absurd result. We must avoid such an interpretation. (See *East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, 229 N.E.2d 522; *DuBois v. Gibbons* (1954), 2 Ill. 2d 392, 118 N.E.2d 295.) Moreover, acceptance of the defendants' argument that the city council delegated the power to the commissioner to be exercised in the manner proposed in this case without guidelines would raise serious questions of the constitutionality of the city council's action. (*Cf. Balmoral Racing Club, Inc. v. Illinois Racing Board* (1992), 151 Ill. 2d 367, 603 N.E.2d 489.) That interpretation of an ordinance which raises questions as to constitutional validity will be avoided. (*People v. Nastasio* (1960), 19 Ill. 2d 524, 168 N.E.2d 728.) It is one thing to say that past performance may be one factor to be considered part of the examination process; it is quite another thing to say that it may be the only factor; and it is still another thing to say that it may be considered on behalf of only some applicants and not all.

In sum, we hold that it was not within the commissioner's authority to make the merit promotions. In other cases, our courts have invalidated the action of an agency when that agency exceeded its pow-

ers as the defendants did in this case. In *Fahey v. Cook County Police Department Merit Board* (1974), 21 Ill. App. 3d 579, 315 N.E.2d 573, for example, the court held that it was not within the board's express or implied powers to determine a compulsory retirement age for members of the Cook County police department. In fact, to do so was inconsistent with the express provisions of the County Police Department Act (Ill. Rev. Stat. 1971, ch. 125, pars. 56, 58), from which the board derived its authority. *Fahey*, 21 Ill. App. 3d at 582. See also *Zurek v. Cook County Police & Corrections Merit Board* (1976), 42 Ill. App. 3d 1044, 356 N.E.2d 1079 (holding that the board had no authority from its enabling act to extend the time within which the sheriff was required to bring charges against a suspended employee); *People ex rel. Gilbert v. Hurley* (1948), 336 Ill. App. 205, 83 N.E.2d 512 (holding that the Civil Service Commission did not have the authority under the Civil Service Act to conduct a hearing to establish the age of a police officer for retirement purposes when charges had been made that the police officer had overstated his age).

Our holding that the defendants went beyond the powers expressly or impliedly granted by the city council is also consistent with holdings from other jurisdictions in civil service cases. See, *e.g.*, *Civil Service Comm'n v. Pekrul* (1991), 42 Conn. Supp. 107, 601 A.2d 1044, *aff'd* (1992), 221 Conn. 12, 601 A.2d 538; *Steers v. City of Cincinnati* (1992), 78 Ohio App. 3d 437, 605 N.E.2d 400; *Fraternal Order of Police, Lodge No. 67 v. City of Maple Heights* (1991), 77 Ohio App. 3d 674, 603 N.E.2d 291; *Meek v. Pugh* (1991), 186 W. Va. 609, 413 S.E.2d 666.

The defendants' argument that the plaintiff has failed to establish a clear legal right is based on their contention that the commissioner and Rodriquez were legally justified in making the 13 additional promotions. We have already determined that they were not.

The defendants next maintain that the plaintiff will not suffer irreparable harm and has an adequate remedy at law because if he "were to prevail in this suit on the merits, he could recover lost income and seniority; the court could award him both damages and 'time and title' to make up for the delay in his promotion." We cannot say that the judge's findings that the plaintiff established irreparable harm and lack of an adequate remedy at law are against the manifest weight of the evidence. A plaintiff's remedy at law is adequate when it is clear, complete, and is as practical and efficient in achieving prompt administration of justice as is the equitable remedy. (*Continental Cablevision of Cook County, Inc. v. Miller* (1992), 238 Ill. App. 3d 774, 606 N.E.2d 587.) In this case, there is no adequate legal remedy for the plaintiff's injury. No legal remedy could

compensate the plaintiff for the experience and prestige he is losing as a result of the defendants' improper promotions, and, therefore, no legal remedy is as clear, complete and efficient as the equitable remedy in this case, which is to prohibit those improper promotions.

The testimony of the plaintiff and Rodriquez establishes that one of the most important aspects of the lieutenant position is that it makes the person in that position eligible for promotion to the exempt ranks. In making these promotions, the appointing authority considers the time the officer has spent as a lieutenant. Even if the plaintiff were to receive the promotion and his lost pay, seniority and benefits, he would remain at a disadvantage for further promotions because of the experience and prestige he lost as a result of the defendants' actions. See *Farmer v. McClure* (1988), 172 Ill. App. 3d 246, 526 N.E.2d 486 (finding that the plaintiff had an inadequate remedy at law because his prospects for advancement were harmed by the delay in his reinstatement).

The defendants also argue that the plaintiff has failed to show irreparable harm because Rodriquez might not make any more promotions to lieutenant for the life of the present promotion list and thus McArdle would not be promoted anyway. We regard this argument as an implied threat. Rodriquez testified that at the time he reorganized the police department to create the 13 additional promotions, he expected to fill 173 lieutenant positions within the following three years. He hoped to make additional promotions before the end of the year. We presume that the superintendent was expressing his best judgment of the needs of the Chicago police department and the citizens of the City of Chicago. We cannot believe that the superintendent would refuse to fill needed promotions because of spite or pique. It is presumed that public officials will perform their duties properly and honorably according to their best judgment. We conclude our discussion of these aspects of the requirements for an injunction with a rhetorical question: If the plaintiff does not have a right to bar the illegal promotions, who does?

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA, P.J., and ZWICK, J., concur.